HALL, Judge.
Plaintiff was injured when her northbound car turned over as she was attempting to go around and behind a large transport truck which was making an illegal left turn from the right shoulder of the road and was blocking both northbound lanes of travel. The district court held the proximate cause of the accident was the failure of plaintiff to have her automobile under control and rejected plaintiff’s action for damages against the truck driver, the owner-lessor of the truck, the lessee of the truck and the insurer of the lessee. Plaintiff appealed.
After review of the evidence it is the conclusion of this court that the truck driver was negligent and that defendants failed to prove plaintiff was contributorily negligent. Accordingly, we reverse, hold for the plaintiff, and award damages.
The accident occurred on October 3, 1973, at approximately 11:00 a. m. on North Market Street in Shreveport. North Market is a north-south four lane thoroughfare with the two southbound and two northbound lanes divided by a wide median. At the scene of the accident there is a break or crossover in the median. To the east side of the highway there is an access street, which is also divided by a curbed median, leading to a service road. At the time of the accident the weather was clear and dry.
The defendant, Billy J. Mason, pulled his 52 foot long tractor-trailer, loaded with butane tanks, onto the east shoulder of the street, and stopped headed north, a few feet south of the intersection of the access street. Another truck driver, J. B. Wren, also pulled his similar vehicle onto the shoulder behind Mason’s unit. The two drivers were to meet for lunch at Sammy’s Restaurant, located on the west side of North Market, opposite the point at which they stopped.
Mason started forward, with the intention of pulling out onto the street and making a left turn through the crossover in the *1275 median in order to get to Sammy’s Restaurant. He testified he looked to the rear (testifying once that he looked in his rear view mirror and testifying another time that he looked out his window) and saw no traffic coming northbound. He pulled out onto the street, crossed both northbound lanes, and continued on across the southbound lanes without stopping, according to his and Wren’s testimony. When his cab was in the crossover of the median, he looked out of his window and saw plaintiff’s automobile coming northbound in the inside lane with its brakes applied and skidding.
Wren, testifying by deposition, stated he was out of his truck and saw plaintiff coming at an excessive rate of speed, estimated by him to be 70 miles per hour. She applied her brakes, skidded to the right, hit the curbed median of the access street to the right, and the car turned over on its left side.
Plaintiff testified she had stopped for a red light at the intersection of North Market and Hearne Avenue, several hundred yards south of the scene of the accident. She proceeded northbound in the inside lane at a speed of about 40 miles per hour, aware of the two trucks parked on the shoulder. She noticed the lead truck begin to move and assumed it was going to pull into the outside lane and proceed northbound. It was not until the truck started crossing the inside lane that she realized what the truck was doing. Plaintiff elected to attempt to go around behind the truck to the right, turning to the right and applying her brakes, but not forcefully. She testified the truck stopped when it got to the median, which made her maneuver more difficult. Plaintiff denied applying her brakes forcefully enough or skidding to the extent that she would have left skid marks.
The investigating police officer had no independent recollection of the location of the skid marks but testified he noted on the accident report 185 feet of skid marks for plaintiff’s vehicle.
The defendant truck driver was clearly and grossly negligent in attempting to execute the left turn from the right shoulder of a heavily traveled city thoroughfare thereby blocking both lanes of northbound travel. See LSA-R.S. 32:101(3). Although he testified he looked before starting the maneuver and saw no northbound traffic behind him, it is doubtful because of the street curving to the east and the location of the other large truck behind him, that he could see far enough to the south to be assured his exceedingly dangerous maneuver could be executed in safety.
Finding the defendant driver negligent, the burden of proof was on defendants to prove plaintiff’s alleged contributory negligence as a bar to her recovery.
There was no reason for plaintiff to be aware of any danger at the time the truck started moving on the shoulder. Even as it entered the street, plaintiff was reasonable in her assumption that the truck would stay in the outside lane and proceed north, presenting no danger or need for evasive action on her part. It was only when the truck started crossing the inside lane that the danger presented itself. At this point, plaintiff was confronted with a sudden emergency.
When confronted with a sudden emergency not of one’s own making, a driver is not held to making the best decision. Plaintiff’s decision to try to go around the truck to the right was reasonable evasive action. She avoided striking the truck and apparently would have escaped without serious mishap if the auto had not hit the median in the access street.
The real issue or question in this case is whether plaintiff contributed to the creation of the sudden emergency. More specifically, the question is whether plaintiff was driving at an excessive rate of speed which contributed to the emergency and was a contributing cause of the accident. The evidence is that plaintiff was keeping a proper lookout and that she took reasonable evasive action when confronted with the emergency. If plaintiff was contributorily negligent, it was because she was traveling at an excessive rate of speed and such ex *1276 cessive speed was a contributing cause of the accident.
The primary evidence as to excessive speed is the 185 feet of skid marks and Wren’s estimate of speed at 70 miles per hour. Plaintiff testified she was going 40 miles per hour and the speed limit was 50 miles per hour.
The evidence on skid marks is vague and sketchy. The officer had no independent recollection in this regard. He could not testify as to location or nature of the marks, but only that he had noted the skid marks on his report made after the investigation. The skid marks, if they were made by plaintiff’s auto, indicate significant speed — but there is no evidence in the record correlating the skid marks with any particular speed. Fifty miles per hour, the legal speed limit, is a significant speed and there is nothing in the evidence to show that the skid marks could not have been made with plaintiff traveling within the speed limit at the time she applied her brakes and began to turn right to avoid the truck.
The testimony of Wren, the defendant driver’s friend and an employee of the defendant company, is entitled to no greater weight than that of plaintiff. His brief observation of the developing situation was hardly adequate for a dependable estimate of plaintiff’s speed.
Even if plaintiff was exceeding the speed limit to some extent, the evidence does not establish that she could have extricated herself from the perilous situation created by the defendant driver’s dangerous maneuver had she been driving within the speed limit. It is not clearly established that the accident would not have happened but for her excessive speed.
Our conclusion is that defendants have failed to establish by a preponderance of the evidence that plaintiff was contributorily negligent. She is not barred from recovery and is entitled to damages for the injuries sustained as the result of the defendant truck driver’s negligence.
Plaintiff’s principal injury from the October, 1973 accident was a compression fracture of the first lumbar vertebra. She was hospitalized for twelve days and placed in a back brace, which she wore for about two months. The fracture healed normally, but the low back pain and partial disability continued up until March 7, 1974. On March 7, plaintiff had another auto accident and injured her neck. Her lower back apparently got worse again following this second accident. She was discharged by the doctor in May, 1974, and went back to work for another employer in July, 1974. She still complains of low back pain, and her present employer and her sister-in-law confirm that her activity has been at least slightly restricted.
Plaintiff incurred medical expenses of $1,065.79 for which she is entitled to recover.
Mrs. Alexander had been working for Western Electric for two days at the time of the accident. Her rate of pay was approximately $120 per week. She is entitled to recover $480 per month during her disability which continued for approximately six months, or a total of $2,880 for loss of wages.
Plaintiff’s automobile was a total loss, for which she was paid by her collision insurer, less $100 deductible, which she is entitled to recover.
Plaintiff rented a car from November 20, 1973, to February 19, 1974, at a cost of $764.40. She is entitled to recover the cost due to loss of use of her automobile for the period of time reasonably necessary to determine that the automobile was a total loss. There is evidence plaintiff and her insurance company were unable to make the determination for a considerable period of time, but under the circumstances about two months should have been adequate. The automobile was not rented until near the end of the 60 day period and recovery of 20 days rental at $8 per day, or $160, will be allowed. See Desselle v. Wilson, 200 So.2d 693 (La.App.3d Cir. 1967).
*1277 Plaintiff’s injury was serious, painful, and there is evidence that plaintiff continues to suffer some pain. However, she is not disabled, and the doctors found that the healing was normal and without complication. The award for general damages— pain, suffering and disability — is fixed at $10,000.
Accordingly, and for the reasons assigned, the judgment of the district court is reversed and judgment is rendered in favor of plaintiff, Margarete Alexander, and against defendants, Billy J. Mason, Riley Beaird, Inc., and Liberty Mutual Insurance Company, in solido, in the sum of $14,-205.79, together with legal interest thereon from date of judicial demand until paid, and all costs of this proceeding, including the cost of appeal.
Reversed and rendered.